IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARLES G. MANSFIELD     :

             :

 v.          : Civil Action No. DKC 15-3693

             :

JOHN KERRY, Secretary,
U.S. Department of State   :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case are the following motions: (1) a motion to dismiss or, in the alternative, for summary judgment filed by Defendant John Kerry ("Defendant"), Secretary of the United States Department of State (the "Agency") (ECF No. 8); and (2) a cross-motion for partial summary judgment filed by Plaintiff Charles G. Mansfield ("Plaintiff") (ECF No. 14). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion for summary judgment will be granted, and Plaintiff's motion for partial summary judgment will be denied.

I.   **Background**[1]

Plaintiff, an African American man, is a retired Agency employee who applied for an Agency Personal Services Contractor, Program Analyst position (GS-0080-13/13) on the Field Support Branch ("FSB"), Vacancy Announcement DS-2011-0230, in 2011. (ECF No. 8-2, at 43-46, 53-67).   The job announcement included the four factors upon which the candidates would be evaluated:

> A.   Experience applying Federal rules, regulations, and policies related to procurement and acquisition activities.
> B.   Experience researching and analyzing data and information to produce forecast plans and reports.
> C.   Experience providing quotes, justifications, requisitions and funding information to vendors pertaining to procurement activities.
> D.   Knowledge of the Federal budgetary rules, regulations and process to provide expert advice and guidance.

(ECF Nos. 12-4, at DOS-0046; 8-2, at 95, 114).   The Agency's human resources department created a Certificate of Eligibles from the applications, which included Plaintiff and four other candidates.   (ECF No. 8-2, at 130-31).   The Certificate of Eligibles included the five candidates' scores on "job-specific self-assessment questions," answered online as part of the application process.   (*See* ECF Nos. 12-4, at DOS-0047; 8-2, at 130-31, 101-02).   Plaintiff had the second-highest self-

---

[1] Unless otherwise noted, the facts outlined here are undisputed or construed in the light most favorable to Plaintiff.

assessment score, and Charles Segrist, Jr., a Caucasian man, had the lowest score.  The Certificate of Eligibles was sent to the selecting official, FSB Branch Chief Tamika Abbott.  (ECF No. 8-2, at 91-93).  FSB Section Chief Rickey Fergerson assisted Ms. Abbott in reviewing the candidates' applications, but did not play a role in making the selection decision for the Program Analyst position.  (*Id.* at 92, 104).  Both Ms. Abbott and Mr. Fergerson are African American.  (*Id.* at 91, 104).

Ms. Abbott reviewed the application materials and ranked the eligible candidates based on her determination of the extent to which each candidate satisfied the four evaluation factors.  (*Id.* at 93, 95).  Ms. Abbott did not interview any of the candidates.  (*See id.* at 93; ECF No. 12-9, at 3).  Ms. Abbott ranked Mr. Segrist first and Plaintiff fourth, and Mr. Segrist was selected for the Program Analyst position.  (ECF No. 8-2, at 93, 95).  Plaintiff was informed that he was not selected for the position on May 3, 2011.  (*Id.* at 44).

On May 9, Plaintiff contacted an Agency Equal Employment Opportunity ("EEO") counselor.  (*Id.* at 16).  A Notice of Right to File a Discrimination Complaint was issued to Plaintiff on August 10.  (*Id.* at 28-29).  On August 23, Plaintiff filed a formal EEO complaint with the Agency Office of Civil Rights.  (*Id.* at 13-15).  The Agency Office of Civil Rights issued a Final Agency Decision determining that Plaintiff did not

establish his claims of discrimination on July 7, 2013. (*See* ECF No. 12-8, at 1). Plaintiff appealed to the Equal Employment Opportunity Commission, and the Office of Federal Operations affirmed on March 11, 2015. Plaintiff requested reconsideration, which was denied on September 3, 2015.

On December 2, 2015, Plaintiff, proceeding *pro se*, filed a complaint asserting racial discrimination for failing to hire him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (ECF No. 1). On April 1, 2016, Defendant moved to dismiss or for summary judgment. (ECF No. 8). Plaintiff was provided with a *Roseboro* notice (ECF No. 9), which advised him of the pendency of the motion to dismiss and his entitlement to respond within seventeen days from the date of the letter. *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (holding *pro se* plaintiffs should be advised of their right to file responsive material to a motion for summary judgment). Plaintiff opposed the motion (ECF No. 12), filed a separate "proposed findings of fact" and a "response to Defendant's proposed finding of fact" (ECF Nos. 13; 15), and moved for partial summary judgment (ECF No. 14). Defendant replied and opposed Plaintiff's motion in his reply brief. (ECF No. 16).

## II.  Standard of Review

Defendant's motion is styled as a motion to dismiss, or in the alternative, for summary judgment.  A court considers only the pleadings when deciding a Rule 12(b)(6) motion.  Where the parties present matters outside of the pleadings and the court considers those matters as it does here, the court will treat the motion as one for summary judgment.  *See Gadsby v. Grasmick,* 109 F.3d 940, 949 (4th Cir. 1997).

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

The moving party bears the burden of showing that there is no genuine dispute as to any material fact.  However, no genuine dispute of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322–23.  Therefore, on those issues on

5

which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial. *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)). Although *pro se* litigants are to be given some latitude, the above standards apply to everyone. Thus, as courts have recognized repeatedly, even a *pro se* party may not avoid summary judgment by relying on bald assertions and speculative arguments. *See Smith v. Vilsack*, 832 F.Supp.2d 573, 580 (D.Md. 2011) (citing cases).

III. **Analysis**

Title VII prohibits discrimination based on an employee's personal characteristics such as "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2525 (2013). To survive a motion for summary judgment, a plaintiff asserting a Title VII claim must provide evidence of intentional discrimination through one of two avenues of proof: (1) direct evidence that discrimination motivated the employer's adverse employment decision, or (2) the *McDonnell Douglas* "pretext framework" that requires a plaintiff to show that the "employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284-85 (4th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Because Plaintiff does not put forth direct evidence of discrimination, his discrimination claim must be examined using the burden-shifting framework established in *McDonnell Douglas*. The familiar *McDonnell Douglas* framework "'compensat[es] for the fact that direct evidence of intentional discrimination is hard to come by'" and "give[s] plaintiffs who lack direct evidence a method for raising an inference of discrimination." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir.

7

2005) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989) (O'Connor, J., concurring in the judgment)).   Under *McDonnell Douglas*, once the plaintiff meets his initial burden of establishing a *prima facie* case for a Title VII violation, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Lockheed Martin*, 354 F.3d at 285.   If the employer meets this burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext'" for discrimination.   *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).   According to the United States Court of Appeals for the Fourth Circuit, "[t]he final pretext inquiry 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination, which at all times remains with the plaintiff.'"   *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) (alteration in original) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

A.   ***Prima Facie* Case**

To establish a *prima facie* case of discriminatory failure to hire based on race, a plaintiff must show that:   (1) he is a member of a protected class;   (2) the employer had an open

position for which he applied; (3) he was qualified for the position; and (4) he was not selected for the position under circumstances giving rise to an inference of unlawful discrimination. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959-60 (4th Cir. 1996); *see also Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005); *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998). Plaintiff has failed to establish a *prima facie* case of discrimination because he has not put forth evidence sufficient to show that his non-selection occurred under circumstances giving rise to an inference of unlawful discrimination.

In his motion for summary judgment, Defendant challenges Plaintiff's showing on only the fourth prong, arguing that selecting official Ms. Abbott did not, and could not, have discriminated against Plaintiff because she was unaware of his race at the time of the selection decision. (ECF No. 8-1, at 8). "It is axiomatic that a defendant cannot be found to have discriminated against a plaintiff on the basis of race where the defendant had no knowledge of the plaintiff's race." *Washington v. Chao*, 577 F.Supp.2d 27, 40 (D.D.C. 2008) (citing cases). There is no evidence in the record that Ms. Abbott knew that Plaintiff was African American. To the contrary, Ms. Abbott attested under oath that she was unaware of Plaintiff's race when she made the hiring decision, and until she was informed of

Plaintiff's EEO complaint. (ECF No. 8-2, at 91). It is undisputed that Plaintiff's application did not mention his race (*see id.* at 53-67), and that Ms. Abbott did not interview him (*see id.* at 44).

Plaintiff asserts that he "believes he first saw" Ms. Abbott at an Agency forum or meeting, and that he "recognized" her at an alternative dispute resolution meeting held after he filed his complaint. (ECF No. 12, at 4). In his EEO Investigative Affidavit, Plaintiff stated that Ms. Abbott was aware of his race because, "as a former Government employee and Manager at State, [he] frequently attended conferences/meetings with Diplomatic Security contract staff and management officials employed by Diplomatic Security where [his] race would have been obvious." (ECF No. 8-2, at 43). Plaintiff also stated in his affidavit that the Agency's personnel records would have included his race. (*Id.*). Plaintiff's contention that he may have seen Ms. Abbott at an Agency conference while he was employed at the Agency, prior to 2007, is not in evidence, but even if it were, it would be evidence only that Plaintiff was aware of Ms. Abbott's race, not that she was aware of his. Ms. Abbott also averred that she considered only the application materials provided to her in making the selection decision, and without any evidence that Ms. Abbott had access to or consulted the Agency's personnel records, or that Plaintiff's race was

recorded therein, the Agency's awareness of Plaintiff's race due to his prior employment cannot reasonably be imputed to Ms. Abbott.[2]   Plaintiff's speculative statements cannot create a genuine dispute on this issue given Ms. Abbott's specific affidavit statement that she was unaware of Plaintiff's race at the time of the selection decision.

Plaintiff also argues that he "believes" that Mary Kelley, a Caucasian supervisory human resources specialist, was "involved with the qualifications and selection [and] knew [his] race" and "played a role in his non-selection." (ECF No. 12, at 5, 7).   The record evidence shows that only Ms. Abbott made the selection decision.   (ECF No. 8-2, at 92, 74, 85, 104). Moreover, Ms. Kelley has also affirmed that she was unaware of Plaintiff's race until she was informed of his EEO complaint (*id.* at 85), and Mr. Fergerson similarly affirmed that he "was unaware of the age and race of the candidates" when he assisted Ms. Abbott in reviewing resumes (*id.* at 104).   Plaintiff's assertions that Ms. Abbott or other officials at the Agency were aware of his race are unsupported by evidence, and accordingly do not create a genuine issue of material fact.

---

[2] In addition, Ms. Abbott, like Plaintiff, is African American. (ECF No. 8-2, at 91).   Her membership "in the same protected racial class as plaintiff. . . . weighs against an inference of discrimination." *Hammond v. Chao*, 383 F.Supp.2d 47, 58 n.2 (D.D.C. 2005).

**B.    Legitimate, Non-Discriminatory Reason and Pretext**

Even if Plaintiff could establish a *prima facie* case of discrimination, he has failed to show that Defendant's legitimate, non-discriminatory reason for not hiring him is a pretext for discrimination.  Defendant has put forth evidence supporting its stated reason for not selecting Plaintiff, which is that he was not the most qualified of the applicants.  Ms. Abbott explained in her EEO Investigative Affidavit that Plaintiff "was not selected because there were three eligible candidates that were ranked higher than he was based on [her] review." (ECF No. 8-2, at 92).  She further explained that Mr. Segrist was selected because he was "the most qualified of the applicants reviewed," based on his experience and the fact that he "possessed current skill sets in all four factors that each candidate was evaluated against." (*Id.* at 93, 95).  In ranking Mr. Segrist first among the eligible candidates, Ms. Abbott noted that he had more than ten years of experience at the Agency, including five within the FSB, and was "well versed with the software and systems used by [the Agency], and has demonstrated superior performance with regard to the major duties outlined in the job analysis." (*Id.* at 93, 146-47).  Ms. Abbott determined that Mr. Segrist was "the most qualified of the applicants reviewed." (*Id.* at 92-93).  The record further reflects that Ms. Abbott ranked Plaintiff fourth among the five

12

candidates, finding that he was "qualified," but noting that his "resume presents management skill sets more than analytical." (*Id.* at 95; *see also id.* at 92, 97, 102, 112). Ms. Abbott noted that Plaintiff's application demonstrated previous, but not current, experience in three of the four skill sets, and that it was not apparent based on a review of his resume "if he was experienced in providing quotes, justifications, requisitions and funding information to vendors pertaining to procurement activities," the fourth requirement. (*Id.* at 95, 97). Ms. Abbott further affirmed that Plaintiff "was ranked number 4 on the hiring managers list because his resume indicated he had experience applying Federal rules, regulations and policies related to procurement and acquisition activities from a position in 2007 but no current experience," while Mr. Segrist's "resume indicated current use of this skill set." (*Id.* at 102).

Plaintiff has produced no evidence of pretext. In order to show pretext, Plaintiff must "prove '*both* that the reason was false, *and* that discrimination was the real reason.'" *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)). Plaintiff argues that he was the most qualified candidate based on his own assessment of his resume and critique of Mr. Segrist's resume. He also argues that Mr. Segrist's experience and resume were falsified. Even construing

Plaintiff's arguments liberally, they are wholly unfounded and clearly contradicted by Defendant's evidence.

Plaintiff does not offer evidence to dispute the legitimacy of Ms. Abbott's statement that she valued current use of the required skills over prior experience in her evaluation of the applications, or that management skills were less important for the Program Analyst position than analytical skills. Plaintiff argues that his resume demonstrated "specialized experience and qualifications" that Mr. Segrist lacked (ECF No. 12, at 8), and submits an affidavit attesting that, based on his own experience and review of the applications, Mr. Segrist's resume did not properly identify examples of his work product or accomplishments (ECF No. 12-12). Plaintiff's evaluations of his and his competitor's applications are not sufficient evidence that Ms. Abbott's nondiscriminatory reasons for Plaintiff's non-selection are false. *See Evans*, 80 F.3d at 960; *Taylor v. Brown*, 928 F. Supp. 568, 574-75 (D.Md. 1995), *aff'd*, 86 F.3d 1152 (4th Cir. 1996) ("Plaintiff expresses his own views as to his qualifications and the necessity for certain experience for the position. 'The self-perception of a plaintiff in an ADEA or Title VII suit as to his or her other qualifications is irrelevant; what matters is the perception of the decision-maker.'" (quoting *Douglas v. PHH FleetAmerica Corp.*, 832 F.Supp. 1002, 1010 (D.Md. 1993))); *see also Hawkins v. PepsiCo, Inc.*,

14

203 F.3d 274, 280 (4th Cir. 2000) (noting that plaintiff improperly disputed the merits of poor performance evaluations in a discriminatory discharge case rather than showing that the evaluations were "dishonest or not the real reason for her termination"); *Bostron v. Apfel*, 104 F.Supp.2d 548, 556 (D.Md. 2000), *aff'd*, 2 F.App'x 235 (4th Cir. 2001) ("Standing alone, self-serving claims of superiority in a Title VII case do not suffice.").

Plaintiff also contends, as evidence of pretext, that he was more qualified for the position than Mr. Segrist because he was ranked second on the Certificate of Eligibles, while Mr. Segrist was ranked fifth. (ECF No. 12, at 8). These scores reflected only the candidates' self-assessments, however. Ms. Abbott affirmed that she did not consider the self-assessment scores in making the selection, but based the decision only on her review of the five applications using the criteria discussed above. (ECF No. 8-2, at 101-02). Once the list of most qualified candidates was provided to Ms. Abbott, she was free to choose from among them, and was not required to take into account the self-assessment scores. (*See id.* at 195 ("The selecting official has the right to select or not select any candidate referred on the promotion certificate or non-competitive list.")).

Plaintiff asserts, without evidence, that Ms. Kelley "fabricated Selectee's [Mr. Segrist's] background to ensure Selectee qualified based on vacancy," and that Ms. Abbott "fabricated Selectee's background, interjected her abstract view into his resume, then re-ranked candidates utilizing her abstract view of Selectee's background." (ECF No. 12, at 8; *see also id.* at 12 (arguing that Plaintiff "believes Agency, HR, and SO [Ms. Abbott] fabricated Selectee's demonstrated specialized experience to get Selectee to qualify")). Plaintiff's mere speculation cannot create a genuine dispute of material fact.

Moreover, Plaintiff has offered no evidence that discrimination was the real reason he was not selected. There is no evidence that Ms. Abbott was "motivated by any desire other than to select the candidate [she] felt was the best suited for the position." *Riley v. Honeywell Tech. Sols., Inc.*, 323 F.App'x 276, 277-78 & n.2 (4th Cir. 2009) (noting that plaintiff's "self-serving contentions that there were differences in evaluation . . . and that [the selectee] was preselected, were properly discounted by the district court as having no viable evidentiary support and as being insufficient as a matter of law to establish pretext"); *see also Hawkins*, 203 F.3d at 281. Plaintiff has not shown that the Agency's legitimate nondiscriminatory reasons for its selection decision

are pretextual, and accordingly, Defendant's motion for summary judgment will be granted.

## IV. Plaintiff's Motion for Partial Summary Judgment

Plaintiff has moved for partial summary judgment solely on the issue of whether Ms. Abbott conducted an interview for the position. (ECF No. 14). The undisputed evidence in the record shows that Ms. Abbott did not interview any of the candidates in making the selection. (ECF Nos. 8-2, at 93; 12-9, at 3). Defendant mistakenly stated in the factual background section of his briefing that Ms. Abbott interviewed only Selectee. (ECF No. 8-1, at 3 & n.2). In reply, Defendant acknowledges this error and argues that this issue is not relevant to the issue before the court. (ECF No. 16, at 5 n.3). Pursuant to the Agency Foreign Affairs Manual, "Selecting officials will have the option of interviewing all, any or none of the candidates referred." (ECF Nos. 8-1, at 3 n.2; 8-2, at 194-95). It is undisputed that Ms. Abbott chose to interview none of the referred candidates, consistent with Agency policy. Her decision not to interview candidates is not a material issue, and Plaintiff's motion for partial summary judgment will be denied.

## V. Conclusion

Plaintiff has failed to establish a genuine dispute as to a material fact with respect to both his *prima facie* case and the

17

legitimate nondiscriminatory reason articulated by Defendant for his non-selection for the Program Analyst position.  For the foregoing reasons, the motion for summary judgment filed by Defendant John Kerry will be granted, and judgment will be entered against Plaintiff with respect to his claim of race discrimination under Title VII.  Plaintiff's motion for partial summary judgment will be denied.  A separate order will follow.


                              /s/
                        _____
                        DEBORAH K. CHASANOW
                        United States District Judge